Jason Kuller, NV Bar No. 12244
Rachel Mariner, NV Bar No. 16728
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Phone: 725.245.6056
Fax: 725.220.1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MA'NYJH O'QUINN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ASCENDA USA, INC. d/b/a and a/k/a 24-7 INTOUCH., a foreign corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS & COLLECTIVE ACTION**<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016<br>2. Failure to Pay Overtime in Violation of NRS 608.018<br>3. Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-050<br><br>**COLLECTIVE ACTION COMPLAINT FOR:**<br>4. Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207<br><br>**INDIVIDUAL COMPLAINT FOR:**<br>5. Retaliation under the FLSA<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ma'nyjh O'quinn, on behalf of herself and all others similarly situated, alleges as follows:

1. This is a class and collective action against ASCENDA USA, INC., d/b/a and a/k/a 24-7 INTOUCH ("Defendant" or "24-7 InTouch") for unpaid wages, overtime, liquidated damages, attorneys' fees, costs, and interest under the Nevada Revised Statutes ("NRS") and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

1

**CLASS AND COLLECTIVE ACTION COMPLAINT**

2. All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge.

3. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

4. At all relevant times, Plaintiff Ma'nyjh O'quin was a Nevada resident employed by Defendant 24-7 InTouch as a non-exempt hourly employee in Clark County, Nevada.

5. At all relevant times, Defendant 24-7 InTouch was a foreign corporation headquartered in Colorado and registered and licensed to do business in Nevada.

6. "Nevada Class Members" are all current and former hourly workers employed by Defendant in the State of Nevada at any time within four years before the filing of this Complaint (February 18, 2021) until the date of judgment in this action (the "Nevada Class Period") who used Defendant's internet timekeeping software to clock-in and record their hours of work.

7. "Federal Class Members" are all current and former hourly workers employed by Defendant in the United States at any time within three years before the filing of this Complaint (February 18, 2022) until the date of judgment in this action (the "FLSA Class Period") who used Defendant's network timekeeping software to clock-in and record their hours of work.

8. The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and this Complaint will be amended at such a time when Plaintiff learns of their identities. Plaintiff is informed and believe that each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein.

9. Any reference in this Complaint to "Defendant," "Defendants," "Doe," "Does," "Doe Defendants," "Ascenda USA, Inc.," or "24-7 InTouch" shall mean "Defendants and each of them."

## JURISDICTION AND VENUE

10. Plaintiff incorporates and realleges all paragraphs above.

11. The Court has jurisdiction over Plaintiff's FLSA overtime claims pursuant to 29 U.S.C. § 216(b), which states: "An action to recover the liability prescribed … may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by


RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

any one or more employees for and on behalf of himself or themselves and other employees similarly situated."

12. Because Plaintiff's FLSA claims arise under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C §1331.

13. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

14. In addition, the Court has supplemental jurisdiction over Plaintiff's Nevada state-law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same common nucleus of operative fact as Plaintiff's FLSA claims concerning Defendant's unlawful treatment of Plaintiff and other similarly situated employees. Plaintiff's FLSA and Nevada wage claims thus form part of the same case and controversy.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resided and worked for Defendant within this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

16. Plaintiff incorporates and realleges all paragraphs above.

17. On or around October 17, 2021, Defendant hired Plaintiff to work as a remote at-home Customer Service Representative.

18. Customer Service Representatives are "customer experience" (or CX) telephone workers who handle customer inquiries, resolve issues, process orders, and otherwise provide a positive customer experience as directed by Defendant for the benefit of its clients or particular client objectives.

19. On information and belief, Defendant employs a significant number of remote workers across different locations in the United States, including Nevada. It is believed that over 50% of Defendant's non-exempt workforce are remote home workers.

20. Plaintiff's base rate of pay when hired was $14.00 per hour, which remained her hourly rate of pay until her termination in February 2023

**CLASS AND COLLECTIVE ACTION COMPLAINT**

21.     In or around March of 2022, Plaintiff was promoted to the position of Subject Matter Expert. There was no increase in her pay rate.

22.     In or around May 2022, Plaintiff was promoted to the position of Trainer, which required Plaintiff to undergo one (1) hour of training each morning in addition to her regular hours. This training time was uncompensated. As a result, Plaintiff was required to work over 8 hours per day without daily or weekly overtime compensation.

23.     Plaintiff made several complaints to her supervisor, human resources, and the head of operations about Defendant's failure to pay her for all hours worked, including overtime.

24.     Defendant also failed to increase Plaintiff's pay rate commensurate with her promotion and her additional responsibilities and hours.

25.     Plaintiff also came to know that non-black male trainers were paid $19-23 per hour, whereas Plaintiff was still stuck at $14 per hour.

26.     Plaintiff is a black female.

27.     In or around August 2022, Plaintiff and another black female Trainer complained to Defendant about wage discrimination on the basis of race and sex.

28.     In or around October 2022, Defendant informed Plaintiff that she would not be receiving a wage increase and that she was being demoted back to Customer Service Representative. This change took effect in November 2022.

29.     At the time of her demotion, Plaintiff estimates that she worked over 195 hours of unpaid overtime.

30.     Furthermore, after she was demoted, Plaintiff became subjected to increasingly severe and unreasonable weekly performance evaluations.

31.     Plaintiff retained a lawyer to help her with her employment situation and unfair treatment.

32.     On or around January 4, 2023, Plaintiff's lawyer wrote a letter to Defendant complaining about Plaintiff's discriminatory treatment as well as Defendant's failure to compensate Plaintiff for all hours worked, including uncompensated overtime and uncompensated "boot time" of her computer. Plaintiff's lawyer also complained about Defendant's failure to compensate Plaintiff

and her coworkers for certain bonuses and incentives, as well as Defendant's failure to properly calculate the regular rate – when it did pay bonuses and incentives – for purposes of paying overtime.

33. On February 3, 2023, approximately one month after receiving the letter from Plaintiff's lawyer, Defendant terminated Plaintiff.

## CLASS AND COLLECTIVE ACTION WAGE ALLEGATIONS

34. Plaintiff incorporates and realleges all paragraphs above.

35. Plaintiff brings this action on behalf of herself and Nevada Class Members and Federal Class Members (collectively "Class Members").

36. Plaintiff O'quin was employed by Ascenda in customer service in Las Vegas, NV from approximately October of 2021 through February of 2023.

37. Plaintiff and Class Members are non-exempt employees that were (and continue to be) paid by the hour.

38. Plaintiff and Class Members typically worked approximately forty (40) "on-the-clock" hours per week.

39. In addition to their forty (40) "on-the-clock" hours, Plaintiff and Class Members often worked up to 15 minutes per day and 75 minutes per week and have not been compensated for that time.

40. While employed for Defendant, Ms. O'quin, and all similarly-situated, current and former employees of Defendant were informed that all employees can only clock in 5 minutes before their shift begins. In fact, Ms. O'quin was reprimanded by her supervisor for clocking in over 5 minutes before her shift commenced.

41. This policy has always been common to all non-exempt hourly paid employees at Defendant's location in the state of Nevada.

42. On information and belief, Defendant knew that it would take employees 15 minutes to boot up every morning.

43. Ms. O'quin and all similarly-situated, current and former employees of Defendant worked over 8 hours in a day, and over forty hours in a week, without receiving full compensation.

44. During the two-week pay period in which Ms. O'quin and all similarly-situated current

and former employees of Defendant, worked over 80 hours, employees were only paid for those 80 hours, instead of accounting for the clock in and clock out times tracked by Super Punch.

45. Plaintiff and all similarly-situated current and former employees of Defendant, regardless of hourly or salary, clock in and out using Super Punch. In order to boot up, employees must awaken or turn on their computers, log in using a username and password, awaken or turn on the Avaya phone system, log into their Microsoft Team, open up the customers files, open a web browser, log into Super Punch using a username and password, and clock in.

46. The estimated boot up time is about 15 minutes.

47. Plaintiff and all similarly-situated current and former employees of Defendant, were not compensated for the boot up time that it takes to clock in.

48. Plaintiff is informed and believes, and thereon alleges, that Defendant knew or should have known that Plaintiff and Class Members were entitled to receive wages for all time worked and they were not receiving all wages earned for work that was required to be performed. In violation of NRS 608.140, 608.016 and 608.018, Plaintiff and Class Members were not paid all wages for all hours worked, including but limited to boot up time and overtime wages.

49. Plaintiff is informed and believes, and thereon alleges, that Defendant knew or should have known they had a duty to compensate Plaintiff and Class Members for all hours worked, and Defendant had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so in order to increase Defendant's profits.

50. Upon information and belief, Defendant maintains an unlawful company-wide policy of not paying overtime to non-exempt hourly and salary employees.

51. Therefore, Plaintiff brings this lawsuit seeking monetary and injunctive relief against Defendant on behalf of herself and all Class Members to recover, among other things, unpaid wages (including boot up time and overtime wages), together with attorney's fees, costs, and interest as provided by law.

52.

### NEVADA CLASS ACTION ALLEGATIONS

53. Plaintiff incorporates and realleges all paragraphs above.

54. Plaintiff brings this action as a class action on behalf of Nevada Class Members under Federal Rule of Civil Procedure 23.

55. At all relevant times, Plaintiff and Nevada Class Members were each an "employee" within the meaning of Nevada law. *See* NRS 608.010.

56. At all relevant times, Defendant was an "employer" of Plaintiff and Nevada Class Members within the meaning of Nevada law. *See* NRS 608.011.

57. Plaintiff reserves the right to modify or redefine "Nevada Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

58. Class treatment of Nevada Class Members is appropriate under Rule 23 for the following reasons:

   A. ***Numerosity***: Nevada Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system. While the number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendant's business records. Upon information and belief, Defendant employs, or has employed, over 25 Nevada Class Members during the Nevada Class Period.

   B. ***Commonality***: Common questions of law and fact exist and predominate as to Plaintiff and Nevada Class Members, including, but not limited to:

   i. Whether Plaintiff's and Nevada Class Members' Boot Time is compensable time under Nevada law;

   ii. Whether Defendant failed to include stipend and bonus amounts in the regular rate of pay for purposes of calculating and paying overtime to Plaintiff and Nevada Class Members;

   iii. Whether Defendant failed to timely pay Plaintiff and Nevada Class Members all wages due and owing upon separation from their employment.

   C. ***Typicality***: Plaintiff's claims are typical of the claims of Nevada Class Members because Plaintiff and Nevada Class Members were subject to the same employment policies and

practices of Defendant during the Nevada Class Period, and each sustained damages. Proof of a common or single state of facts will therefore establish the right of Plaintiff and Nevada Class Members to recover.

D. *Adequacy*: Plaintiff will fairly and adequately represent the interests of Nevada Class Members because Plaintiff is a Nevada Class Member and has the same legal and factual issues as Nevada Class Members and has no interests antagonistic to Nevada Class Members. Plaintiff has retained legal counsel competent and experienced in class actions, including labor and employment litigation. Plaintiff and her counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

E. *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Plaintiff and each Nevada Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal practice of failing to compensate Customer Representatives and Remote Representatives in accordance with Nevada wage-and-hour law. Class action treatment will permit a relatively large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendant and other state employers. Consequently, an important public interest will be served by addressing this matter as a class action.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

59. Plaintiff incorporates and realleges all paragraphs above.

60. Plaintiff brings this action on behalf of herself and Federal Class Members as a collective action pursuant to 29 U.S.C. § 216(b).

61. Federal Class Members are similarly situated to Plaintiff, and vice versa.

62. Plaintiff is similarly situated to Federal Class Members based on the same factors of commonality, typicality, and adequacy enumerated above.

63. At all relevant times, Plaintiff and Federal Class Members were each an "employee" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e), (g).

64. At all relevant times, Defendant was an "employer" of Plaintiff and Federal Class Members within the meaning of the FLSA. *See* 29 U.S.C. § 203(d), (g).

65. Plaintiff reserves the right to modify or redefine "Federal Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

66. Pursuant to 29 U.S.C. § 216(b), Plaintiff filed her consent to sue under the FLSA on September 24, 2024. (*See* Plaintiff's Complaint for Damages (ECF No. 1) at Ex. A.)

## FIRST CAUSE OF ACTION

### Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016

**(On Behalf of Plaintiff and Nevada Class Members)**

67. Plaintiff incorporates and realleges all paragraphs above.

68. NRS 608.016 states that "An employer shall pay to the employee wages for each hour the employee works."

69. Hours worked means anytime the employer exercises "control or custody" over an employee. *See* NRS 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee.").

70. Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." N.A.C. 608.115(1).

71. Here, Defendant failed to pay Plaintiff and Nevada Class Members for Boot Time.

72. Defendant's policy and practice violated NRS 608.016, which requires payment for each and every hour worked.

73. Wherefore, Plaintiff and Nevada Class Members demand payment by Defendant at their regular hourly rate of pay for each and every hour worked during the Nevada Class Period, together with attorney's fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

**Failure to Pay Overtime in Violation of NRS 608.018**

**(On Behalf of Plaintiff and Nevada Class Members)**

74. Plaintiff incorporates and realleges all paragraphs above.

75. In relevant part, NRS 608.018(2) provides that "An employer shall pay 1 ½ times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 ½ times the minimum rate set forth in NRS 608.250 works: (a) more than 40 hours in any scheduled week of work…."

76. Here, Plaintiff and Nevada Class Members worked over 40 hours per workweek without being paid overtime for the hours of compensable time over 40. This includes time spent on uncompensated Boot Time.

77. In addition, even when Defendant paid overtime, it did not include all forms of compensation received by Plaintiff and Nevada Class Members during the relevant pay period in the regular rate of pay for purposes of paying overtime (*e.g.*, "shift differential" pay).

78. Wherefore, Plaintiff and Class Members demand payment by Defendant at one and one-half times their "regular rate" of pay for all hours worked in excess of 40 hours per workweek during the Nevada Class Period, together with attorney's fees, costs, and interest as provided by law.

**THIRD CAUSE OF ACTION**

**Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-050**

**(On Behalf of Plaintiff and Nevada Class Members)**

79. Plaintiff incorporates and realleges all paragraphs above.

80. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

81. NRS 608.030 similarly provides that an employee who resigns or quits must be paid within seven days or on the next regular payroll date, whichever earlier occurs.

82. NRS 608.040(1) states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or…[o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the

10
**CLASS AND COLLECTIVE ACTION COMPLAINT**

day the employee resigned, quit, or was discharged until paid for 30 days, whichever is less."

83. NRS 608.050 grants a "lien" to every employee separated from employment for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

84. Here, by failing to compensate Plaintiff and Nevada Class Members separated from employment for all hours and overtime hours worked as hereinabove described, Defendant has failed to timely remit all wages due and owing to Plaintiff and those Nevada Class Members.

85. Wherefore, Plaintiff and Nevada Class Members separated from Defendant's employment demand up to thirty (30) days of wages and an "employee lien" pursuant to NRS 608.040 and NRS 608.050, together with attorney's fees, costs, and interest as provided by law. Plaintiff and Nevada Class Members also claim a private cause of action to foreclose a lien against Defendant, if necessary, to collect wages due pursuant to NRS 608.050.

## FOURTH CAUSE OF ACTION

### Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207

**(On Behalf of Plaintiff and Federal Class Members)**

86. Plaintiff incorporates and realleges all paragraphs above.

87. The FLSA provides that "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

88. At all relevant times, Defendant failed to pay one and one-half times the applicable regular rate of pay for all hours worked by Plaintiff and Federal Class Members in excess of 40 hours in any given workweek.

89. Defendant's violation of the FLSA has been willful, and Defendant knew or should have known that its policies and practices have been unlawful.

90. Wherefore, Plaintiff and Federal Class Members demand payment by Defendant at one

11
**CLASS AND COLLECTIVE ACTION COMPLAINT**

and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA Class Period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

### FIFTH CAUSE OF ACTION

### For Retaliation under the FLSA

### (On Behalf of Plaintiff)

91. Plaintiff incorporates and realleges all paragraphs above.

92. The FLSA protects persons against retaliation for asserting their rights under the statute.  See 29 U.S.C. § 215(a)(3).

93. To establish a retaliation claim under the FLSA, a plaintiff must generally show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two.

94. Here, Plaintiff engaged in protected activity by complaining about her wages and overtime, including FLSA violations, through her lawyer's Letter dated January 4, 2023.

95. On February 6, 2023 – barely two months later – Defendant terminated Plaintiff without resolving her pay issues.  Defendant' retaliation can be inferred from the proximity of her lawyer's Letter and her subsequent termination, especially considering the pretextual reason for that termination.

96. By engaging in the conduct described above, Defendant unlawfully retaliated against Plaintiff under the FLSA.

97. Defendant acted intentionally, with malice, fraud, or oppression, in retaliating against Plaintiff and her protected activity.

98. As a result of Defendant' wrongful actions, Plaintiff has suffered and continues to suffer loss of earnings and benefits, damage to her reputation and career, and severe anguish and emotional distress.

99. Plaintiff seeks all damages and remedies available to her under law including, but not limited to, compensatory, consequential, liquidated, and punitive damages, as well as attorneys' fees, costs, and interest.

**CLASS AND COLLECTIVE ACTION COMPLAINT**

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff pray for relief as follows:

1. For compensatory damages, including front pay, back pay, lost wages and benefits, out-of-pocket costs and expenses, emotional distress damages, punitive damages, as well as other special and general damages, according to proof;

2. For damages, according to proof for the regular rate of pay under applicable state or federal law for all hours worked;

3. For damages, according to proof for the minimum wage rate under applicable state or federal law for all hours worked;

4. For damages according to proof of overtime compensation at one and one-half the regular rate of pay under applicable state or federal law for all unpaid or underpaid hours worked over 40 in a week, or over 8 hours in a single period of 24 consecutive hours;

5. For 30 days of wages pursuant to NRS 608.040 and 608.050;

6. For liquidated (double) damages pursuant to 29 U.S.C. § 216(b).

7. For an order certifying this action as a class action under FRCP 23 on behalf of Nevada Class Members;

8. For an order conditionally certifying this action as a collective action under the FLSA on behalf of Federal Class Members;

9. For an order appointing Plaintiff as representatives and their counsel as class counsel for Federal Class Members and Nevada Class Members;

10. For reasonable attorneys' fees authorized by statute, common law, or equity;

11. For costs of suit incurred herein;

12. For pre-judgment and post-judgment interest at the maximum legal rate; and

**CLASS AND COLLECTIVE ACTION COMPLAINT**

13. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: February 18, 2025       **RAFII & ASSOCIATES, P.C.**

_____
JASON KULLER
Of Counsel
*Attorney for Plaintiff*



14
**CLASS AND COLLECTIVE ACTION COMPLAINT**

# EXHIBIT A

# EXHIBIT A

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

Print Name: Ma'nyjh O'Quin

1. I hereby consent to be a party plaintiff in a collective action lawsuit against **ASCENDA USA INC. d/b/a INTOUCH INC.** and/or any other named defendants ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. I understand this lawsuit seeks to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other relief available pursuant to the FLSA.

3. I designate the law firm of RAFII & ASSOCIATES, P.C., and any other attorneys with whom they may associate, as my attorneys in this lawsuit to prosecute my FLSA and related claims.

4. I understand I have the right to pursue my claims individually on my own behalf. I agree to serve as the Class Representative if the Court so approves. If someone else serves as Class Representative, then I designate such Class Representative(s) as my agents to make decisions on my behalf concerning the litigation and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at RAFII & ASSOCIATES, P.C., to use this consent to file my claims in a separate lawsuit, class/collective action, or arbitration against Defendants.

Signature: ma'nyjh o'quin      Date: 2/6/2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date shown file stamped above, I served a true and correct copy of the foregoing pleading on all registered parties with the Court's electronic filing system.

    /s/ Jason Kuller
Jason Kuller
Of Counsel
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com